UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DORIAN SANFORD,

    **Plaintiff,**

v.

    Case No. 2:15-cv-1424
    CHIEF JUDGE EDMUND A. SARGUS, JR.
    Magistrate Judge Kimberly A. Jolson

ASHTON B. CARTER,

    **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (ECF No. 39), Plaintiff's Memorandum in Opposition (ECF No. 41), and Defendant's Reply in Support. (ECF No. 42.) For the reasons that follow, Defendant's Motion is **GRANTED**.

### I.   BACKGROUND

**A. Procedural background**

Plaintiff, Dorian Sanford ("Ms. Sanford"), began employment with the Secretary of Defense Finance and Accounting Service ("DFAS") in May 2010 as an accounting technician. (Sanford Aff., ECF No. 41-1.) DFAS is a component of the U.S. Department of Defense. On May 27, 2014 Ms. Sanford filed an Equal Employment Opportunity ("EEO") complaint alleging sexual harassment by her supervisor Eric Gersper, which she supplemented on October 27, 2014, to allege race discrimination[1] and retaliation claims, all in violation of Title VII. On March 24, 2015, Plaintiff filed the instant action. On April 24, 2015, the Magistrate Judge screened Plaintiff's Complaint pursuant 28 U.S.C. § 1915(a), recommending her Complaint proceed

---

[1] In her Memorandum in Opposition, Ms. Sanford agrees that her claim for racial discrimination should be dismissed. (Pl.'s Memo. in Opp. at 18.)

against Ashton B. Carter, Secretary of Defense and dismissed all other defendants under Title VII, 42 U.S.C. § 2000e-16 as improper. (ECF No. 3.) On June 16, 2015, the Court adopted the Report and Recommendation. (ECF No. 8.) The Defendant now moves for summary judgment on all claims. (ECF No. 39.)

**B. Factual Background**

    **1. Alleged Harassment**

In July of 2013, Ms. Sanford was moved to a new team under the supervision of Eric Gersper ("Mr. Gersper"). (Sanford Decl. at 2. ECF No. 39-2.) Mr. Gersper in turn reported to Pam Vogel ("Ms. Vogel") the division Chief, who reported to Chris Mattingly ("Mr. Mattingly"), the Director of Accounts Receivable. (Vogel Dep. at 11:1–16, ECF No. 38-5.)

Ms. Sanford describes her work-space as a small cubicle-type desk. (Pl.'s Mot. in Opp. at 2, ECF No. 41.) She contends that her space was too small to fit two employees. Thus, there was not enough space for her and Mr. Gersper when Mr. Gersper entered her workspace. Ms. Sanford asserts that over the course of several months between 2013 and 2014, Mr. Gersper entered her cubicle, kneeled next to her desk and reached over her to show her work on her computer screen. (*Id.*) By positioning himself into the small space, Ms. Sanford contends,

> his body was directly up against mine. He would squeeze down into the area so that his body was directly up against mine. He would put his thigh against my thigh and my hip, and then his left arm would brush up against the right side of my breast. He did this often, multiple times a week. I think it was twice a week on average. Once he almost touched my right nipple, it was close.

(Sanford Decl. at 2, ECF No. 39-2.) Ms. Sanford never alleges Mr. Gersper's alleged physical contact was accompanied with inappropriate words. Instead she states "[h]e never propositioned me sexually or threatened to harm me if I did not do something sexual. He was just creepy and

2

intimidating with his physical contact." (*Id.* at 18.) Ms. Sanford never complained of Mr. Gersper's actions or reported his conduct until she filed a Congressional complaint.

   **2. Complaints**

In December 2013, Ms. Sanford filed a Congressional complaint against Mr. Gersper, which DFAS received in approximately February 2014. (*Id.* at 5–7.) During the investigation, Ms. Sanford's coworker, Stephany Small, wrote an email to the investigator stating, "I've seen her supervisor, Eric Gersper, sitting in a tight space next to her instead of sitting on the side where there is more room. He's too big to squeeze himself in that right space between her and the file cabinet." (Pl.'s Exhibit 3, ECF No. 41-3.)

Thereafter, on February 13, 2014, Ms. Sanford contacted an Equal Employment Opportunity ("EEO") counselor. Ms. Vogel first learned about Ms. Sanford's allegations after Ms. Sanford contacted the EEO Office in February of 2014. (Vogel Dep. 16:5–23; 17:6–25; 18:1–25; 19: 1–25; 20:1–25; 21:1–2.) Mr. Gersper was similarly unaware Ms. Sanford had any issues with him until February 2014. In response to the allegations, Mr. Mattingly brought in an "outside internal investigator," Charlene Anderson to investigate the complaint and issued a "no-contact order" to Mr. Gersper, prohibiting contact between Mr. Gersper and Ms. Sanford during investigation of the complaint. (Vogel Dep. 28:18–29; 19:1–13.) After counseling was deemed unsuccessful, Ms. Sanford filed a formal Complaint of Discrimination on May 27, 2014 ("EEO Complaint"). (EEO Report, ECF No. 39-1.)

On February 20, 2014, Ms. Vogel met with Ms. Sanford to inform her of the investigation into her complaint. Ms. Vogel testified that Ms. Sanford refused to speak with her. Ms. Vogel testified that after explaining to Ms. Sanford that Ms. Anderson would be investigating the complaint and asking if Ms. Sanford "if there was anything that she would like

3

to discuss before we left the room," Ms. Sanford refused to respond. (Vogel Dep. 28:18–25; 29:1–19.) Instead, "[s]he had a piece of paper written on it and pushed it over to me. I don't recall if she said anything other than pushing me the piece of paper that said, 'I don't trust you as a manager. I am not going to have a conversation with you.'" (*Id.*)

Ms. Sanford also refused to cooperate with Ms. Anderson's investigation of her complaint. Prior to the arranged meeting with Ms. Anderson, Ms. Sanford noticed Ms. Anderson and Ms. Vogel were Facebook friends. Therefore, instead of cooperating with the investigation of her complaint, she told Ms. Anderson that she "was sexually harassed by Eric Gersper, my supervisor but did not feel comfortable about sharing the details with her because of her friendship outside of DFAS with Pam Vogel." (Def.'s Exhibit 4 at 000745, ECF No. 39-9.) Indeed, Ms. Sanders initially spurned Ms. Anderson's attempts to meet with her, ultimately attending the meeting because she was told to do so by Mr. Brockwell. (Sanford Decl. at 4 ("He [Mr. Brockwell] made me meet with the harassment investigator (Charlene Anderson), who was Facebook/Social Media friends with Pam Vogel.").) Because Ms. Sanford refused to cooperate and because none of her coworkers witnessed the alleged inappropriate touching, the investigation was deemed inconclusive. (EEO Report at 13.)

Angela Schultz, director of the Office of Equal Opportunity Programs investigated Ms. Sanford's EEO complaint and issued a Final Agency Decision ("EEO Decision"). (Def.'s Exhibit A, ECF No. 39-1.) She interviewed eleven of Ms. Sanford's coworkers as well as Mr. Gersper, Ms. Vogel, Mr. Mattingly, and Mr. Mattingly's superior Mr. Brockwell. (*Id.* at 5–6.) The eleven interviewed coworkers included Ms. Small and Ms. Pope, both of whom Ms. Sanford contends witnessed Ms. Gersper's alleged inappropriate actions. (*Id.*) The EEO Decision reflects that the "[e]leven (11) co-workers uniformly testify that they "never experienced or

4

witnessed inappropriate physical contacts in the workplace." (*Id.* at 13.) Ms. Schultz concluded that Ms. Sanford's allegation, of being subjected to unwelcome conduct "has not been established." (EEO Report at 13.) She based her decision in-part on the facts that

> [m]ore than once, management attempted to investigate the allegations when it learned of them and encouraged Complainant to share details of the alleged incidents of sexual harassment she had experienced; Complainant refused to do so. Moreover, there is no corroborating testimony by any of the several employees who were interviewed or any documentary evidence that these incidents, which allegedly occurred in Complainant's cubicle during work hours, occurred.

(*Id.*)

### 3. Alleged Retaliation

In September of 2014, Ms. Sanford received a new supervisor, Thomas Stewart ("Mr. Stewart"). Shortly after becoming her supervisor, Mr. Thomas moved a group of employees to desks that surrounded her workstation. Ms. Sanford contends that the relocated co-workers had positive relationships with Mr. Gersper. (EEO Final Agency Decision, Exhibit 1 at 10, ECF No. 39-1.) She complained to Mr. Thomas about the co-workers now sitting near her and he offered to move her one row over. She declined. (*Id.*)

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

5

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (internal quotations omitted). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Liberty Lobby, Inc.*, 477 U.S. at 248; s*ee also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby, Inc.*, 477 U.S. at 251–52.

### III. LAW AND ANALYSIS

Ms. Sanford claims she was subjected to a hostile work environment in violation of Title VII based on her allegations of unwanted touching. She further alleges that Defendant retaliated against her because, after she filed complaints, coworkers within her group who had friendships with her former supervisor were moved to desks near her workspace.

**A. Sexual Harassment**

Ms. Sanford alleges that Mr. Gersper's actions amounted to a hostile work environment

6

in violation of Title VII. It is well established that "Title VII offers employees protection from a 'workplace [ ] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . .'" *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 514 (6th Cir. 2009) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To establish a prima facie case for a hostile-work-environment claim under Title VII, a plaintiff must show that (1) she was a member of a protected class, (2) she was subjected to unwelcome harassment, (3) the harassment was based upon the employee's protected status, (4) the harassment affected a term, condition, or privilege of employment, and (5) "the supervisor's harassing actions were foreseeable or fell within his or her scope of employment, and the employer failed" to take "reasonable care to prevent and correct any sexually harassing behavior." *Kestner v. Stanton Group, Inc.*, 202 F. App'x 56, 58 (6th Cir. 2006) (citing *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560–61 (6th Cir. 1999)).

"[E]mployer liability for supervisor harassment is vicarious," provided that an employer may raise an affirmative defense to liability or damages by establishing: (1) that the employer "exercised reasonable care to prevent and correct promptly any harassing behavior"; or (2) that the plaintiff "unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Smith v. Bank One, N.A.*, 2000 U.S. App. LEXIS 21510, at *9 (6th Cir. 2000); *cf. Davis v. Landscape Forms, Inc.*, 640 F. App'x 445, 451 (6th Cir. 2016) ("To prove employer liability based on the actions of coworkers as opposed to the actions of supervisors, a plaintiff must demonstrate that the employer 'knew or should have known of the charged [] harassment and failed to implement prompt appropriate corrective action.'"). If the employer shows that the employee "unreasonably failed to use any complaint procedure that the employer provided, such showing will

7

ordinarily satisfy the employer's burden under the second element of the defense." *Chancellor v. Coca-Cola Enters.*, Case No. 1-08-65, 2009 U.S. Dist. LEXIS 113277, at *18 (S.D. Ohio December 3, 2009).

A plaintiff must establish that the harassment in question "had the effect of unreasonably interfering with her work performance and created an objectively intimidating, hostile, or offensive work environment." *Warf v. U.S. Dep't of Veterans Affairs*, 713 F.3d 874, 878 (6th Cir. 2013). In other terms, the conduct in question "must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." *Id.*; *see also Barrett v. Whirlpool Corp.*, 556 F.3d 502, 514 (6th Cir. 2009) (explaining that "'severe or pervasive' is properly considered in the disjunctive"). When determining whether the alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment, the Court must look to the "totality of the circumstances" relating to the workplace environment. *Williams*, 187 F.3d at 562; *cf. Austion v. City of Clarksville*, 244 F. App'x 639, 649 (6th Cir. 2007) (holding that, within the hostile work environment context, the Court may look to "a series of separate acts that collectively constitute" discrimination, even if "some of the component acts of the hostile work environment fall outside the statutory time period"). Courts may consider a number of factors, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance." *Harris*, 510 U.S. at 23.

The inquiry relating to the seriousness of the harassment "is not subject to any precise mathematical test." *Armstrong v. Whirlpool Corp.*, 363 F. App'x 317, 324 (6th Cir. 2010). On the one hand, Title VII is not a "code of workplace civility" and "[s]imple teasing, offhand

comments, and isolated incidents (unless extremely serious) will not amount to a hostile work environment." *Rayford v. Illinois Cent. R.R.*, 489 F. App'x 1, 5 (6th Cir. 2012) (internal quotations omitted). At the same time, gender based comments and remarks will weigh in favor of a pervasiveness finding when they are "commonplace, ongoing, and continual" in nature. *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 252 (6th Cir. 1998); *see also Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 337 (6th Cir. 2008).

### 1. Prima Facie Case

Plaintiff first alleges her supervisor, Mr. Gersper, subjected her to a hostile work environment as the subject of unwanted inappropriate touching. She alleges Mr. Gersper would enter her small workspace and position himself such that

> his body was directly up against mine. He would squeeze down into the area so that his body was directly up against mine. He would put his thigh against my thigh and my hip, and then his left arm would brush up against the right side of my breast. He did this often, multiple times a week. I think it was twice a week on average. Once he almost touched my right nipple, it was close.

(Sanford Decl. at 2.)

Defendant asserts that no genuine issue of material fact remains such that he is entitled to judgment as a matter of law because Plaintiff's allegations of Mr. Gersper's inappropriate touching are unsubstantiated. Specifically, Defendant points to Plaintiff's coworkers who were deposed and/or interviewed for the EEO investigation and never witnessed any inappropriate touching to argue that the only evidence of inappropriate touching are from Plaintiff's bare assertions. Defendant thus posits that there is insufficient evidence to support Plaintiff's claim at trial. The Court disagrees.

Plaintiff has provided evidence that during the time period of the alleged harassment, she worked in a small workspace and Mr. Gersper would position himself near her in the space.

9

Plaintiff's coworker, Stephany Small confirmed Ms. Sanford' account of her small workspace and the fact that Mr. Gersper would sit beside Ms. Sanford when she wrote "I've seen her supervisor, Eric Gersper, sitting in a tight space next to her instead of sitting on the side where there is more room. He's too big to squeeze himself in that right space between her and the file cabinet." (Pl.'s Exhibit 3, ECF No. 41-3.) Outside of her allegations, Plaintiff does not provide evidence that Mr. Gersper touched her inappropriately. What remains is Plaintiff's testimony confirming her allegations and the testimony of Mr. Gersper and her coworkers in contradiction. Accordingly, the question remains for the jury whether any touching took place, and if so, whether the touching was inadvertent or purposeful.

Plaintiff alleges that she was inappropriately touched about twice a week for an extended period of time. This allegation is sufficient to present a genuine issue of material fact for the jury to determine whether Mr. Gersper's actions were severe and pervasive. *U.S. EEOC v. Dave's Supermarkets, Inc.*, Case No. 1:09-cv-2119, 2011 U.S. Dist. LEXIS 19881, at *34 (N.D. Ohio March 1, 2011) (finding, "[f]or a supervisor to deliberately touch an employee's breast is overtly sexual conduct."). Plaintiff further testified that the alleged harassment "took the edge off of my concentration and ability to focus on my work. I could not focus on anything that Mr. Gersper was talking about because I was preoccupied with his attempts to touch me physically." (Sanford Decl. 18–19.)

Viewing the facts and evidence in the light most favorable to Ms. Sanford, a reasonable jury could find that Ms. Sanford's workplace was permeated with harassment sufficiently severe and pervasive to alter the conditions of her employment and create a hostile work environment.

Further, the Court finds a genuine issue of material dispute regarding whether "the supervisor's harassing actions were foreseeable or fell within his or her scope of employment,

10

and the employer failed" to take "reasonable care to prevent . . . any sexually harassing behavior." *Kestner*, 202 App'x at 58 (citing *Williams*, 187 F.3d at 560–61). The parties do not discuss what steps, if any, Defendant took to prevent sexual harassment in the workplace, although it is undisputed the Defendant took Ms. Sanford's claims seriously.

### 2. Defendant's Affirmative Defense Against Vicarious Liability

As a general matter, employer liability is vicarious and may be disputed by the employer as an affirmative defense under two narrow exceptions. The employer must establish either (1) that it "exercised reasonable care to prevent and correct promptly any harassing behavior"; or (2) that the plaintiff "unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Smith.*, 2000 U.S. App. LEXIS 21510, at *9 (6th Cir. 2000).

It is undisputed the Defendant took Ms. Sanford's claims seriously. Along with full cooperation with the EEO investigation into Ms. Sanford's complaint, DFAS also brought in an outside investigator to examine her complaint. DFAS further instituted a no-contact order between Mr. Gersper and Ms. Sanford, removing her from any contact with him. Ms. Sanford continues to work for DFAS and now has a different supervisor. Defendant, nonetheless, does not meet the first exception to vicarious liability because a genuine issue of material fact remains whether it exercised reasonable care to prevent the alleged harassment.

A review of the second exception to employer liability, however, reveals that no dispute of fact remains whether Ms. Sanford unreasonably failed to take advantage of any corrective opportunities provided by Defendant. Accordingly, Defendant has met its burden in asserting a defense against vicarious liability. Ms. Sanford refused to cooperate with any investigation into her complaints. First, when Ms. Vogel, the division chief, met with Ms. Sanford to inform her

11

that DFAS brought in Ms. Anderson, an outside internal investigator, and asked Ms. Sanford about her concerns, Ms. Sanford refused to even verbally respond and instead wrote on a piece of paper that she did not trust Ms. Vogel and would not speak to her about the matter. (Vogel Dep. 28:18–25; 29:1–19); (Def.'s Exhibit 4 at 000745, ECF No. 39-9.) Then, Ms. Sanford rejected Ms. Anderson's attempts to investigate her complaints. At first, Ms. Sanford refused to even meet with Ms. Anderson. After being ordered by her chain of command to meet with the investigator, Ms. Sanford admittedly declined to share any relevant information with Ms. Anderson. (Def.'s Exhibit 4 at 000745.) She justified her refusal by reasoning that she did not trust Ms. Anderson because Ms. Anderson and Ms. Vogel are Facebook friends. (*Id.*) The Court finds Ms. Sanford's justification unreasonable.[2]

Finally, the Director of the Office of Equal Opportunity Programs investigated Ms. Sanford's complaint and issued the EEO Decision. (Def.'s Exhibit A, ECF No. 39-1.) The EEO Decision found Ms. Sanford's allegations unestablished. (*Id.* at 13 "[t]he weight of the evidence does not support Complainant's claim of sexual harassment.") It specifically notes Ms. Sander's refusal to cooperate stating, "[m]ore than once, management attempted to investigate the allegations when it learned of them and encouraged Complainant to share details of the alleged incidents of sexual harassment she had experienced; Complainant refused to do so." (*Id.*)

Based on Ms. Sanford's continuing choice not to cooperate with any investigation into her allegations of sexual harassment and her unreasonable justification for her actions, Defendant has established that Ms. Sanford unreasonably failed to take advantage of any

---

[2] The Court notes Ms. Sanford never explained her mistrust for Ms. Vogel except to the extent she stated that Ms. Vogel worked as a manager at DFAS. (Vogel Dep. 28:18–25; 29:1–19 (testifying that Ms. Sanford told her "I don't trust you as a manager.").)

12

corrective opportunities provided by DFAS. Accordingly, judgment for Defendant on Ms. Sanford's hostile work environment claim is **GRANTED**.

**B. Retaliation**

In addition to her hostile work environment claim, Ms. Sanford maintains that Defendant retaliated against her in violation of Title VII based on her complaints and EEO activity. To establish a prima facie case of Title VII retaliation, a plaintiff must show that:

> (1) [she] engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.

*Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000). It is uncontested that Ms. Sanford engaged in activity protected by Title VII. The parties' principal dispute is over whether Plaintiff suffered an adverse employment action and, if she did, whether there was a causal connection between the protected activity and the adverse action.

Plaintiff contends that management's action in moving a group of employees to desks near her work station constituted an adverse employment action.[3] (EEO Report at 16.) The Court concludes, however, that Plaintiff did not suffer an "adverse employment action" as that phrase is interpreted under Title VII. Moving of coworker desks, without more, does not

---

[3] In her Memorandum in Opposition, Ms. Sanford alleges four other adverse actions only brought previously in the discrimination context – a claim she has since voluntarily dismissed. None of the new allegations supports a prima facie case of retaliation. The four new acts are alleged to have taken place by Mr. Gersper prior to his knowledge of her complaints. (Pl.'s Resp. in Opp. at 15.) To establish an action as retaliatory, Ms. Sanford must show that her "exercise of protected rights was known" to Mr. Gersper at the time he took any alleged adverse employment actions against her. *Evans v. Prospect Airport Servs.*, 286 F. App'x 889, 894 (6th Cir. 2008). The facts establish that Mr. Gersper was unaware of any complaints against him until February 13, 2014 and that by February 18, 2014, he ceased all contact with Ms. Sanford due to the no-contact order. Thus, as Ms. Sanford does not even allege the acts took place after Mr. Gersper became aware of her complaints, any such alleged actions could not have taken place in retaliation for her protected activity.

constitute an adverse employment action. Since there is no adverse employment action, it is unnecessary for the Court to address whether there is a causal connection between the protected activity and the adverse employment action.

Title VII's anti-retaliation provision "seeks to prevent employer interference with unfettered access" to Title VII's remedial mechanisms. *Burlington Northern and Santa Fe Ry. Co. v. White*, 548, U.S. 53, 68 (2006). Thus, to set forth a claim of retaliation, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (citation omitted). "[N]ormally petty slights, minor annoyances, and simple lack of good manners," however, "will not create such deterrence" and therefore are not considered materially adverse actions. *Id.*

Plaintiff contends the act of moving the employees near her was in reprisal for her complaints because the relocated employees have positive relationships with Mr. Gersper. She further alleges that these moves increased the likelihood that Mr. Gersper would more frequently visit her work station in the future. Prior to the move, the employees at issue were located one row over from her workstation. (Sanford Decl. at 2.) When she first learned about the planned move from her new supervisor, Thomas Stewart, she emailed him about her concerns. (*Id.* at 4.) In response, Mr. Stewart offered to move her workspace over a row. (*Id.* at 5.) Ms. Sanford declined his offer. Had she accepted, she would have been located the same distance from the employees as she was before they were moved. (*Id.* at 2.)

Admittedly, Plaintiff herself does not believe Mr. Stewart, who was responsible for organizing the move, had any retaliatory intent, as she explained, "Mr. Stewart is not retaliating against me. He is too new and has nothing to do with the current situation." (Sanford Decl. at

14

17.) The Court finds that the action Plaintiff alleges – the relocation of her coworkers to workspaces near her desk – does not amount to more than a minor annoyance and would not dissuade a reasonable worker from making or supporting a charge of discrimination.

Accordingly, no genuine issue of material fact remains for the jury to determine. Judgment is **GRANTED** for Defendant on Plaintiff's retaliation claim.

### IV. CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment is **GRANTED** (ECF No. 39) and Plaintiff's Unopposed Motion to Continue Trial is **DENIED as moot**. (ECF No. 50.) The Clerk is directed to enter judgment in favor of the Defendants and close this matter.

**IT IS SO ORDERED.**

1-10-2018
**DATE**

**EDMUND A. SARGUS, JR.
CHIEF UNITED STATES DISTRICT JUDGE**